# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**KRISTEN M. SPALT**,                              Chapter 7
     Debtor                              Case No. 16-10131-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**DONALD R. LASSMAN, CHAPTER 7
TRUSTEE,**
     Plaintiff,
v.                                            Adv. P. No. 16-1150
**KRISTEN M. SPALT**,
     Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion for Summary Judgment filed by Donald

R. Lassman, the Chapter 7 Trustee (the "Plaintiff" or the "Trustee") of the bankruptcy

estate of Kristen M. Spalt (the "Defendant" or the "Debtor").  Through his Motion, the

Plaintiff seeks summary judgment against the Debtor on Counts I, III and IV of the

"Amended Complaint Objecting to Discharge of the Debtor."  Specifically, the Plaintiff

seeks judgment denying the Debtor a discharge 1) pursuant to 11 U.S.C. § 727(a)(4)(D)

due to her failure to furnish him with records and information that he requested (Count

I); 2) pursuant to 11 U.S.C. § 727(a)(4)(A) for knowingly and fraudulently making false

oath(s) or account(s) on her Schedules (Count III); and 3) pursuant to 11 U.S.C. § 727(a)(6) due to her refusal to obey a lawful order of the Court, specifically a Stipulation as approved by an Order of this Court (Count IV).

The Plaintiff filed a Statement of Undisputed Material Facts in Support of his Motion for Summary Judgment together with the Affidavit of Jonathan M. Hixon, counsel for the Plaintiff, together with a Memorandum of Law. The Defendant filed an Opposition to the Motion for Summary Judgment, a Response to the Plaintiff's Statement of Undisputed Material Facts and an Affidavit.

The Court heard the Motion for Summary Judgment on September 7, 2018 and took the matter under advisement. The Court now makes its findings of fact and rulings of law in accordance with Fed. R. Civ. P. 56, made applicable to this proceeding by Fed. R. Civ. P. 7056.

## II. UNDISPUTED FACTS

The Debtor commenced a Chapter 7 case on January 15, 2016.[1] The Trustee conducted the meeting of creditors and examined the Debtor on February 17, 2016. The Trustee continued the meeting of creditors to March 16, 2016 and then continued it several more times while the Trustee awaited the production of certain financial records and documents that he had requested from the Debtor.

---

[1] The Court may take judicial notice of its own docket. *See* <u>LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)</u>, 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

A. <u>The Debtor's Production of Records to the Trustee</u>

On January 29, 2016, the Debtor filed Schedule A/B: Property disclosing as assets

ownership interests in several entities as follows:

- ▪ 80% shareholder of Jackbox, LLC;
- ▪ 14.28% interest in the Nancy Gallagher Partnership;
- ▪ Trustee/beneficiary of the KG Family Trust;
- ▪ 50% beneficiary of the J.P. Realty Trust;
- ▪ 50% beneficiary of the S&S Realty Trust;
- ▪ Interest in Narragansett Bay Towing, LLC;
- ▪ 50% interest in New Ranger, LLC;
- ▪ 20% interest in Cape Coastal Marine, LLC;
- ▪ 20% interest in Mohawk Callais, LLC;
- ▪ 10% interest in Lydonia, LLC; and
- ▪ 8% interest in Cape 10-21 LLC

On February 26, 2016, the Debtor filed a "Notice of Amended Voluntary Petition

and Form 122A-1"[2] to which she attached, as "Schedule A," a listing of all of the above-

described entities, plus Cape Oceanic LLC, Cape Coastal Landscaping LLC and "West

Newbury, Ma (land)." The Debtor stated on a "Schedule A," which was not Official Form

106A/B, that "[t]he Debtor has an interest in each of the above [14 entities], either directly

as a member or indirectly because the membership interest is held by a trust in which she

has an interest."

The Debtor also scheduled the following bank accounts in her Schedule A/B:

Property:

---

[2] According to the Debtor, the purpose of the amendments was to correct "the Debtor's
response to Part 6, Questions 16 and 17 of the Voluntary Petition to indicate that the
Debtor's debts are primarily business debts and to indicate on Form 122A-1 that, as a
result, there is no presumption of abuse." Part 6 of the petition contains a definition of
business debts as follows: "*Business debts* are debts that you incurred to obtain money for
a business or investment or through the operation of the business or investment."

▪ Jackbox, LLC; TD Bank; Acct no. ending in 8555;
▪ KG Family Trust, Kristen Spalt, Trustee; TD Bank; Acct no. ending in 5541;
▪ Kristen M. Spalt and James E. Spalt, Charles Schwab & Co., Inc.; Acct no. ending in 5477;
▪ Kristen M. Spalt, Charles Schwab & Co., Inc.; Acct no. ending in 6665;
▪ Kristen M. Spalt, Charles Schwab & Co., Inc.; Acct no. ending in 6666;
▪ Kristen M. Spalt, Charles Schwab & Co., Inc.; Acct no. ending in 6670;
▪ TD Bank checking, Account no. ending in 1169;
▪ TD Bank savings, Account no. ending in 1169 ("1169" is most likely a typographical error, the actual account no. likely ends in 942);
▪ South Lafourche Bank- business checking for Cape Coastal Marine, LLC (20% shareholder); and
▪ Charles Schwab & Co., Inc. trust account – J.P. Realty Trust

The Debtor admitted listing the accounts but stated that she was not a signatory on the South Lafourche Bank account and that she did not have an interest in the account."[3]

On March 2, 2016, the Trustee delivered to Debtor's counsel a 3-page document entitled "List of documents to produce[.]"  On March 30, 2016, Debtor's counsel delivered to Trustee's counsel approximately one and one-half banker's boxes of documents in response to the Trustee's List of documents to produce.

On June 3, 2016, the Trustee requested, by letter from his counsel to Debtor's counsel, that the Debtor produce additional documents, including, among other things, the following:

(i) All schedules, consents, votes, directions, certificates or other documents evidencing the ownership of beneficial interests or membership interests or evidencing or constituting transfers of beneficial interests or membership interest in various entities the Debtor held a beneficial or membership interest in;
(ii) Organizational documents for Cape 10-21 LLC and 10-21 Nominee Trust;

---

[3] Accordingly, it is unclear why the Debtor listed the South Lafourche Bank account if she had no interest in it.

(iii) Bank records for the Debtor's TD Bank checking and savings accounts, Cape Coastal's South Lafourche account and a Charles Schwab & Co. trust account for JP Realty Trust;

(iv) Source documents for Jackbox's TD Bank account;

(v) Source documents for KG Family Trust's TD Bank Account;

(vi) Records of deposits and withdrawals from the Debtor's 5477 Account;

(vii) Records of deposits and withdrawals from the Debtor's Charles Schwab account ending in 6665;

(viii) Records of transfers in and out of JP Realty Trust;

(ix) Operating agreements for Jackbox, Cape 10-21 LLC, Cape Coastal, Lydonia, Mohawk Callais, Narragansett, New Ranger and Veatch LLC;

(x) Federal tax returns for Cape Coastal, Veatch and Debtor's other entities;

(xi) The most recent income statements for Cape Coastal, Mohawk Callais, Lydonia, New Ranger and Narragansett and the most recent balance sheet and income statements for Cape 10-21, LLC and Veatch, LLC;

(xii) Exhibits to the Statement of Undisputed Fact with Plaintiff and Defendant Responses filed in the Suffolk County Superior Court action 12-04539; and

(xiii) A schedule of payments of tuition, room, board, fees and any other charge or expenses with respect to any of the Debtor's children.

The Debtor failed to timely produce the documents, records or communications responsive to the Trustee's request. Nevertheless, the Defendant contends that "Counsel for the Debtor and Counsel for the Trustee had various conversations regarding the documents, the Debtor's efforts to obtain the documents from third parties and the nonexistence of certain of the documents." The Defendant did not point to any specific part of the record to support that assertion. The Court notes that the Defendant in her Affidavit stated, on the one hand, that she attempted to comply with the Trustee's requests but because the information was in the possession of third parties she relied on her husband to produce the documents. On the other hand, she represented that she produced one and one-half banker boxes of documents as well as a memory stick

containing 50,000 pages of documents.  She did not indicate in her Affidavit whether any of the documents she produced were responsive to the Trustee's requests.

On July 10, 2016, and again on August 12, 2016, Trustee's counsel followed up with emails to Debtor's counsel requesting the same documents that he had requested in the June 3, 2016 letter.  The Debtor again failed to timely produce the documents, records or communications responsive to the Trustee's follow-up requests. Trustee's counsel testified that he alerted Debtor's counsel that he had not received documents from the Debtor's accountants and attorneys; the Defendant attempted to deny the testimony with reference to "conversations regarding the documents" between counsel to the Debtor and counsel to the Trustee.

On August 25, 2016, the Trustee filed his Complaint Objecting to Discharge of the Debtor on the grounds that, inter alia, the Debtor failed to produce records to the Trustee related to her property and financial affairs. Approximately four months later, on or around January 2017, the Debtor produced a thumb drive to counsel for the Trustee consisting of approximately 40,000 to 50,000 pages of documents that were produced to the Debtor by Massachusetts Housing Finance Authority ("MHFA").

In support of his position that he did not obtain the documents requested, the Plaintiff relies upon the testimony of his counsel during the trial held in <u>Massachusetts Housing Finance Agency v. Spalt</u>, Adv. P. No. 16-1127.  Specifically, during the trial, his counsel, James M. Liston, Esq., testified that, although he may have exchanged telephone calls with Debtor's counsel, he did not obtain all the documents requested until after August 25, 2016 when the Trustee filed an adversary proceeding objecting to the Debtor's

discharge, adding "[s]ubsequent to that, we probably received most of these documents at different points in time from different sources  - - from a  number of different sources including the debtor.  The debtor did submit - - give [sic] us certain of the documents after the adversary had been commenced." Notably, the Trustee was required to obtain pertinent documents from third parties.

On February 14, 2017, the Trustee served his Request for Admissions in this matter. The Debtor never responded to the Request for Admissions.[4]

On January 3, 2018, the Trustee filed his Motion to Deem Admitted and Conclusively Establish the Matters Set Forth in the Trustee's Request for Admissions and to Preclude Defendant from Introducing Evidence to the Contrary.  The Debtor failed to file any response, and, on January 24, 2018, the Court granted the Trustee's Motion.  As such, the following facts, in relevant part, are deemed admitted and conclusively established:

> i. On March 2, 2016, the Trustee delivered to Debtor's Counsel a 3-page document entitled "List of documents to produce," including a "[c]opy of KG Family Trust as of 1/15/16, a copy of the Schedule of Beneficiaries, and document showing transfers of any property into, or out of, this trust for the period January 1, 2012 to date;"[5]
> ii. On March 30, 2016, Debtor's Counsel delivered to Trustee's Counsel approximately one and one-half banker's boxes of documents in response

---

[4] Notably, on August 17, 2017, the Trustee was required to file a Motion to Compel Initial Disclosures and Responses to the Trustee's Discovery Requests and Sanctions.  Although that motion was resolved, it did not end the Debtor's pattern of failing to comply with discovery requests.

[5] The Plaintiff attached a complete copy of the document as Exhibit G to the Affidavit of Jonathan M. Hixon.

to the Trustee's List of documents to produce, consisting of approximately 3,075 pages of documents;

iii. On June 3, 2016, Trustee's Counsel sent to Debtor's Counsel a letter requesting additional documents;[6]

iv. Debtor's Counsel received the letter referred to in paragraph [iii] above on or before June 9, 2016;

v. On July 10, 2016, Trustee's Counsel sent Debtor's Counsel an email and attachment;[7]

vi. Debtor's Counsel received the email and attachment described in paragraph [v] above on July 10, 2016;

vii. On August 12, 2016, Trustee's Counsel sent Debtor's Counsel an email and attachment in which he stated: "[T]his is a further follow up to the attached letter dated June 3, 2016 and my email of July 10, 2016. As of this

---

[6] The Plaintiff attached a complete copy as Exhibit H to the Affidavit of Jonathan M. Hixon. Specifically, the Trustee requested the following, together with 12 other categories of financial records:

> Copies of all schedules, consents, votes, directions, certificates or other documents evidencing the ownership of beneficial interests or membership interests or evidencing or constituting transfers of beneficial interests in any of the following entities: . . . [the entities listed on the Debtor's Schedule A/B plus 10-21 Nominee Trust and Veatch, LLC] . . . . The time period covered by this request is from the date of formation or creation of each such entity to the present date. Document production should include, without limitation, any original schedules or lists of beneficial interests or membership interests with respect to such entities and any such schedules or lists thereafter created. With respect to the above, you have so far provided copies of only: assignments dated March 12, 2008 of certain beneficial and membership interests to KG Family Trust; a schedule of interests in Cape 10-21 LLC as of 2/18/2011; and a certificate showing the original beneficiaries of the S&S Realty Trust.

[7] In his July 10, 2016 email, counsel to the Plaintiff stated: "I am following up on my attached letter dated June 3, 2016. I have not received any of the requested documents and, as far as I am aware, none of the requested documents have been provided to the Trustee." Counsel to the Trustee added: "Also, at the recent 2004 examination of Kristen Spalt, she testified that her interests in the Cape 10-21 LLC and/or 10-21 Nominee Trust was transferred to KG Family Trust. Please provide copies of the documents effecting this transfer along with the items requested in my attached letter [dated June 3, 2016]."

date, the Trustee has not received any of the documents requested in that letter and email."[8]

viii. Debtor's Counsel received the email and attachment described in paragraph [vii] above on August 12, 2016;

ix. As of August 25, 2016 [the date of the commencement of this adversary proceeding], neither the Debtor nor the Debtor's Counsel had delivered to the Trustee any of the additional documents requested in the letter dated June 3, 2016 from Trustee's Counsel to Debtor's Counsel;

x. On August 25, 2016, the Trustee filed the Complaint commencing the Adversary Proceeding;

xi. On August 31, 2016, Debtor's Counsel sent Trustee's Counsel an email and attachment consisting of a copy of the Cape 10-21 LLC member list dated February 18, 2011, and Trustee's Counsel sent Debtor's Counsel a reply to said email requesting a copy of a document of assignment of the Debtor's membership interest in Cape 10-21 LLC to the KG Family Trust;[9]

xii. As of August 25, 2016, neither the Debtor nor Debtor's Counsel had delivered to the Trustee any document evidencing the assignment of her membership interest in Cape 10-21 LLC to the KG Family Trust;

xiii. On August 31, 2016, Debtor's Counsel sent Trustee's Counsel an email and attachment consisting of a copy of the KG Family Trust Schedule of Beneficiaries and Trustee's Counsel sent Debtor's Counsel a reply to said email requesting the original of said KG Family Trust Schedule of Beneficiaries, complete copies of which email communications and attachment are attached to Plaintiff's First Request for Admissions as Exhibit L;

xiv. As of August 25, 2016, neither the Debtor nor the Debtor's Counsel had delivered to the Trustee a copy or original of the KG Family Trust Schedule of Beneficiaries;

xv. As of the date of this Plaintiff's First Request for Admissions, neither the Debtor nor the Debtor's Counsel had delivered to the Trustee the original of the KG Family Trust Schedule of Beneficiaries;

xvi. As of August 25, 2016, neither the Debtor nor the Debtor's Counsel had delivered to the Trustee copies of any bank account records including check images for the following account from 1/1/2012 to the present (as identified in the Schedules): TD Bank checking account ending in no. 1169;

---

[8] The Plaintiff attached a complete copy as Exhibit J to the Affidavit of Jonathan M. Hixon.

[9] The Plaintiff attached complete copies of email communications as Exhibit K to the Affidavit of Jonathan M. Hixon.

xvii. As of August 25, 2016, neither the Debtor nor the Debtor's Counsel had delivered to the Trustee copies of any bank account records including check images for the following account from 1/1/2012 to the present (as identified in the Schedules): TD Bank savings account ending in no. 1169;[10]

xviii. As of August 25, 2016, neither the Debtor nor the Debtor's Counsel had delivered to the Trustee copies of bank account records including check images for the following account from 1/1/2012 to the present (as identified in the Schedules): South Lafourche Bank - business checking for South Coastal Marine, LLC;

xix. As of August 25, 2016, neither the Debtor nor the Debtor's Counsel had delivered to the Trustee copies of brokerage account records including check images for the following account from 1/1/2012 to the present (as identified in the Schedules): Charles Schwab & Co., Inc. trust account – J.P. Realty Trust;

xx. As of August 25, 2016, neither the Debtor nor the Debtor's Counsel had delivered to the Trustee copies of brokerage account and/or bank account records including check images requested in paragraphs 4-7 inclusive of the Trustee's Counsel's June 3, 2016 letter to Debtor's Counsel; [11]

xxi -xxviii. As of August 25, 2016, neither the Debtor nor the Debtor's Counsel had delivered to the Trustee an original or copy of any operating agreement for Cape Coastal Marine, LLC; Lydonia, LLC; Mohawk Callais, LLC; Narragansett Bay Towing, LLC; New Ranger, LLC; Veatch, LLC; Jackbox, LLC; or Cape 10-21, LLC;

xxix -xxxv. As of August 25, 2016, neither the Debtor nor the Debtor's Counsel had delivered to the Trustee any documents (other than the Schedules) showing the Debtor's percentage ownership interest in Cape Coastal Marine, LLC; Lydonia, LLC; Mohawk Callais, LLC; Narragansett Bay Towing, LLC; New Ranger, LLC; Veatch, LLC; or Jackbox, LLC;

xxxvi. As of August 25, 2016, neither the Debtor nor the Debtor's Counsel had delivered to the Trustee copies of filed federal tax returns for: Cape Coastal Marine, LLC, years 2012 to 2015; and/or Veatch, LLC, years 2012-2015;

xxxvii. As of August 25, 2016, neither the Debtor nor the Debtor's Counsel had delivered to the Trustee copies of filed 2015 federal tax returns for the Debtor;

xxxviii. As of August 25, 2016, neither the Debtor nor the Debtor's Counsel had delivered to the Trustee copies of the exhibits to the Statement of

---

[10] This admission appears to be duplicate of the admission set forth in xvi.

[11] These documents were requested by Counsel to the Trustee on June 3, 2016.

Undisputed Facts with Plaintiff and Defendant Responses filed in the Suffolk Superior Court action 12-04539 in support of Kristen Spalt's motion for summary judgment;

xxxix. As of August 25, 2016, neither the Debtor nor the Debtor's Counsel had delivered to the Trustee a schedule of payments of tuition[,] room and board, fees and any other charges or expenses, with respect to any of the Debtor's children during the period from 1/1/2012 to the present;

xl. As of August 25, 2016, neither the Debtor nor the Debtor's Counsel had delivered to the Trustee an original or copy of any organizational documents including, without limitation, declarations of trust and list of properties owned by 10-21 Nominee Trust.

B. The Debtor's Oaths Relating to Her Schedules and SOFA

In her Statement of Financial Affairs ("SOFA") filed with the Court on January 29, 2016, when asked if, within 2 years before she filed for bankruptcy, she sold, traded, or otherwise transferred any property to anyone, other than property transferred in the ordinary course of her business or financial affairs, the Debtor answered "No."

The Plaintiff contends the Debtor owned the Account No. ending in 5477 at Charles Schwab & Co., Inc. (the "Charles Schwab Account"), which she disclosed on Schedule A/B. The Debtor represents that she and her son, James E. Spalt, owned the account, adding that each had the right to make deposits and withdrawals without the consent or knowledge of the other.[12]

As part of her failure to respond to the Trustee's Request for Admissions, the Debtor admitted, and thus it has been conclusively established, that there were two transfers from the Charles Schwab Account during the two-year period prior to the Debtor's bankruptcy petition as follows: (i) one on March 26, 2014 in the amount of

---

[12] The Debtor did not reference or attach any agreement establishing the account to corroborate this statement.

Case 16-01150   Doc 100   Filed 10/15/18   Entered 10/15/18 12:04:28   Desc Main
Document      Page 12 of 37

$530,000.00; and (ii) one on October 7, 2014 in the amount of $86,000.00.  The Debtor admits the transfers were made, but maintains that they were made without her knowledge to an account in Louisiana used by a business her son and his father operated.

The transfer for $530,000.00 was made to Cape Coastal Marine LLC's account at South Lafourche Bank. The Debtor, while admitting the transfers were made, contends that Cape Coastal Marine LLC was a management company for boats located in Louisiana and that, while she had an interest in the limited liability company, "she had a passive role in the LLC and had no role in the operation or management of the LLC or Cape Coast Marine LLC [sic]."

The undisclosed transfer was made to Cape Coastal Marine LLC at a time when the Debtor and her spouse were subject to a preliminary injunction in a state court action brought against them by MHFA,[13] although Cape Coastal Marine LLC was not subject to the injunction.  Pursuant to the injunction, the Debtor and her spouse were prohibited:

> individually or in any other capacity, including, without limitation, as trustee of the KG Family Trust, as a member of New Ranger, LLC, as a manager of Narragansett Bay Towing, LLC, as manager of Cape Coastal Landscaping, LLC, and as manager of Cape Oceanic, LLC, J.P. Realty Trust, S&S Realty Trust, KG Family Trust, Jackbox, LLC, New Ranger, LLC, Narragansett Bay Towing, LLC, Cape Oceanic, LLC, Hudson Corp, Cape Coastal Landscaping, LLC; and all other officers, agents, servants, employees, attorneys, and those persons in active concert or participation with the above named persons from selling, encumbering, pledging, hypothecating, assigning, transferring or otherwise causing to be transferred or devalued,
>
>    ▪ any and all real or personal property owned by them;

---

[13] The Superior Court entered a temporary restraining order on December 11, 2013.  The court converted the temporary restraining order into a preliminary injunction on January 2, 2014.

12

> ▪ any and all beneficial ownership and/or membership
> interests in J.P. Realty Trust, S&S Realty Trust, KG Family
> Trust, Jackbox, LLC, New Ranger, LLC, Narragansett Bay
> Towing, LLC, Cape Oceanic, LLC Hudson Corp, Cape
> Coastal Landscaping, LLC; and
>
> ▪ any and all personal property in which the above-named
> defendants have a legal, equitable, or beneficial interest . . .

The Debtor's interest in the Charles Schwab Account ending in 5477 was personal

property in which she had a legal and equitable interest.

According to the Plaintiff, after the transfer, Cape Coastal Marine, LLC began

paying the Debtor's personal and household bills.   The Debtor disputes this assertion,

contending that her husband "was employed by Cape Coastal Marine LLC and a

signatory on the account of Cape Coastal Marine LLC," adding that "[a]ny payments

from Cape Coastal Marine were made by James Spalt, not the Debtor."

The Trustee asserts that the Debtor testified at the MHFA trial that she knew about

the $530,000.00 transfer from the account but did not recall whether she amended her

Schedules or SOFA to include such transfer.   The Debtor contends that her knowledge

arose after the complaint filed by MHFA.   The Debtor never amended her Schedules or

SOFA to include the transfers.

In her SOFA, when asked whether she transferred any property to a self-settled

trust during the preceding ten years, the Debtor answered "No." The Declaration of Trust

for the KG Family Trust was executed by the Debtor on or about February 2, 2008 and

recorded with the Essex County Registry of Deeds, on July 11, 2008, in Book 27913, Page

69.  Although the Debtor denied that she is the settlor of the KG Family Trust, the Trustee

submitted a copy of the "Declaration of Trust Establishing KG Family Trust," a nominee trust, which provides in part:  "I, Kristen Spalt, Trustee, hereby declare that Ten (10) Dollars is held in trust hereunder and any and all additional property, real and personal, that may be acquired hereunder (the "Trust Estate") shall be held in trust, solely as nominee, for the sole benefit of the individuals or entities listed in the Schedule of Beneficiaries . . . ."

The Debtor, in her Schedule A/B: Property filed with the Court, listed an 80% ownership interest in Jackbox, LLC; a 50% ownership interest in J.P. Realty Trust; and an 8% ownership interest in Cape 10-21 LLC.  Nevertheless, the Debtor testified during her 2004 Examination that she transferred her interest in Jackbox, LLC to the KG Family Trust on or about March 12, 2008. The Debtor also testified that her interests in J.P. Realty Trust and Cape 10-21 LLC had been transferred to the KG Family Trust in and after 2008. The Debtor, in her Schedules, listed herself as "Trustee/beneficiary of the KG Family Trust."

The Debtor states that she is not the sole beneficiary of the KG Family Trust.  She testified in her 2004 Examination that her children also are named as beneficiaries of the KG Family Trust.  The KG Trust Schedule of Beneficiaries ultimately produced to the Trustee after August 25, 2016 reflects that the Debtor's children hold beneficial interests in the trust in unspecified percentages or amounts.

C. The Debtor's Compliance with Bankruptcy Court Orders

The Debtor and her spouse owned real property located at 63 Braggs Lane, Barnstable, Massachusetts at the commencement of the Debtor's Chapter 7 case.  The Debtor and her spouse, James Spalt, ceased occupying the Property sometime prior to

14

July 1, 2016 and leased the Property to Hilary O'Malley pursuant to Massachusetts Residential Lease Agreements.

On September 26, 2016, the Trustee filed "Chapter 7 Trustee's Motion for Turnover of Rents (Expedited Determination Requested)."[14] According to the Trustee the unauthorized execution of a lease violated the automatic stay and was void as a matter of law. The Debtor objected to the motion, and thereafter, the Debtor, her spouse, James Spalt, and the Trustee entered into a Stipulation which the Debtor personally executed. The Trustee filed a Motion for Approval of Stipulation Regarding Rents, together with the Stipulation. The Court granted the Motion on October 17, 2016. The order approving the Stipulation was served on the Debtor and her counsel. Pursuant to Paragraph 3 of the Stipulation, the Debtor and James Spalt agreed that in the event that the Lease was

---

[14] The Trustee represented the following in his Motion for Turnover:

> Upon information and belief, in May of 2016, the Debtor and/or her spouse, James Spalt, entered into an unauthorized post-petition lease of the Property to Hilary O'Malley, as tenant, pursuant to a certain Massachusetts Residential Lease Agreement, dated May 23, 2016 (the "Lease"). . . . The Lease has a term of one year covering the period from July 1, 2016 to July 1, 2017. The rent payable under the Lease is $3,000.00 per month or $36,000.00 per annum. James Spalt purportedly signed the Lease on June 3, 2016 as shown on the last page of the Lease. The Debtor, however, appears to have signed a change to the Lease by deleting paragraph 24 of the Lease as shown on the sixth page of the Lease.

The Trustee noted in his motion that "expenses appear to total approximately $23,350.00 per annum while rental income under the post-petition Lease totals $36,000.00 per annum" and that "the Spalts were paid, upon signing of the Lease and thereafter, a $3,000.00 security deposit; a $600.00 pet deposit; first and last month's rent in the amount of $6,000.00; July rent in the amount of $3,000.00, August rent in the amount of $3,000.00 and September rent in the amount of $3,000.00, for a total of $18,600.00."

extended for any term or terms beyond June 2017, they would continue to pay the Trustee half of the difference between the monthly rent for such extended term and the monthly Property Expenses as defined in the Stipulation.[15]   Pursuant to Paragraph 4 of the Stipulation, the Debtor and James Spalt were required to send the Trustee the following:

> [W]ritten evidence of their monthly payments of the Property Expenses [as defined in the Stipulation] each and every month during the term of this Stipulation so that such written evidence of such payments is received by the Trustee on or before the last day of the month in which they are made. Failure to timely provide such written evidence of payment to the Trustee shall be deemed to be proof for the purposes of this Stipulation that such payment was not made.

On July 26, 2017, August 1, 2017 and January 31, 2018, James M. Liston, Esq., counsel for the Trustee, sent email requests to Charles R. Bennett, Esq., counsel for the Debtor, for written evidence of Property Expenses as set forth in the Stipulation.  The Debtor stated that "the requests were forwarded to James Spalt, who was the person acknowledged to be in charge of the property and making decisions regarding the lease and payment expenses."  The Debtor and James Spalt did not respond timely to the Trustee's requests.

On March 5, 2018, as a result of the Debtor's failure to deliver to the Trustee proof of payment of the Property Expenses, the Trustee filed his Chapter 7 Trustee's Motion for Order Directing Payment of Rent under Stipulation, seeking an order authorizing the Trustee to direct Hilary O'Malley, the tenant at the Premises, to pay all further rent for the Premises payable under the Second Lease directly to the Trustee.  In his Motion, the

---

[15] The Lease was in fact extended for another year from July 1, 2017 to June 30, 2018 (the "Second Lease").

Trustee stated: "[t]he Spalts [sic] failure to send written evidence of payment of the Property Expenses to the Trustee is proof that they are not paying such expenses under paragraph 4 of the Stipulation." That same day, the Court entered an Order directing that "[t]he Debtor shall file a response to the Trustee's Motion, admitting or denying each numbered paragraph on or before March 7, 2018 at 4:30 pm, failing which the Court shall grant this Motion without further notice of a hearing." Notwithstanding the explicit direction contained in the Court's March 7, 2018 order, the Debtor did not timely file a response to the Trustee's Motion and thus failed to comply with the order. Moreover, by failing to admit or deny the paragraphs of the Trustee's motion, the Debtor is deemed to have admitted that she and James Spalt were not paying the Property Expenses in accordance with the Stipulation, which the Court approved on October 17, 2016. Accordingly, on March 8, 2018, the Court granted the Trustee's Motion for Order Directing Payment of Rent under Stipulation, authorizing him to direct Hilary O'Malley to pay all further rent for the Premises payable under the Second Lease, all as defined in the Motion, directly to him.

Subsequently, on March 20, 2018, the Debtor provided the Trustee with certain written evidence of monthly payment of the Property Expenses (as defined in the Stipulation). At the time of the above production, the Trustee had already filed his Motion seeking to enforce the Stipulation, as approved by the Court, and the Court had already entered its Order directing payment of rent to the Trustee.

17

## III. THE DEBTOR'S AFFIDAVIT IN OPPOSITION TO THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

The Debtor submitted an Affidavit in support of her opposition to the Trustee's Motion for Summary Judgment.  In her Affidavit, she blamed her husband's "financial missteps, unsuccessful investments and financial maneuvering" for forcing her into bankruptcy and causing her to "liv[e] barely above the poverty line."  She asserted that "Mr. Spalt established the KG Family Trust and transferred his and apparently certain of [her] assets to the KG Family Trust."  She added that he liquidated his assets and ran the funds through a Charles Schwab Account which she owned with her adult son, also named James Spalt (i.e., James E. Spalt), and that he used funds from the sale of property which he and his brother owned to invest in limited liability companies which purchased boats to service the oil and gas industry in Louisiana.  She represented that she had no role in the management of financial affairs of any of the entities located in Louisiana and any position she had in any entities "was totally passive."

While maintaining that MHFA essentially has a vendetta against her, she stated that after she commenced her bankruptcy case, she "acted in good faith to fully and completely comply with all of [her] obligations as a debtor."  She asserted that she attempted to fully comply with the Trustee's request for information and never withheld documents in her possession.  She indicated that she relied upon her husband in preparing her Schedules and SOFA, adding that "[w]hile such reliance may have been misplaced, under the circumstances, I never had any intent to conceal assets from creditors or the Trustee."

18

The Debtor in her Affidavit maintained that all of the financial affairs for the family were handled by her husband and that "[u]nder his stewardship the family has been enmeshed in over ten years of litigation with MHFA, has presided over business failures, and dissipated the family assets and wealth."  In support of her contention that she was unaware of what was transpiring with respect to her financial affairs and the financial affairs of her family, she stated that she did not review the account statements when they arrived at their home and left them for her husband to review.  She said she did not knowingly or intentionally withhold information from the Trustee and delivered to the Trustee all of the Schwab account statements for 2014 and 2015, although she did not say when.  She represented in her Affidavit that she had no motive or incentive not to make a full and complete disclosure and was honest in her answers.  Finally, she stated the following:

> With respect to the Trustee's assertion that I failed to comply with the Stipulation relating to the lease of the family home, *I never was included in that transaction.*  All the communications and discussions with the tenant were done by my husband.  Likewise, all of the discussions with the Trustee and his Counsel were through my husband.

(emphasis supplied).

## IV. DISCUSSION

### A. Summary Judgment Standard

According to the United States Bankruptcy Appellate Panel of the First Circuit in

Raso v. Fahey (In re Fahey), 482 B.R. 678 (B.A.P. 1st Cir. 2012),

> "In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056." Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 762 (1st Cir. 1994); *see also* Soto–Rios v. Banco Popular de Puerto Rico, 662

F.3d 112, 115 (1st Cir. 2011). "By its express terms, the rule incorporates into
bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil
Procedure." In re Varrasso, 37 F.3d at 762 (citations omitted); *see also* Soto–
Rios v. Banco Popular de Puerto Rico, 662 F.3d at 115; Fed. R. Bankr. P. 7056;
Fed. R. Civ. P. 56.6 "It is apodictic that summary judgment should be
bestowed only when no genuine issue of material fact exists and the movant
has successfully demonstrated an entitlement to judgment as a matter of
law." In re Varrasso, 37 F.3d at 763 (citing Fed. R. Civ. P. 56(c)). "As to issues
on which the nonmovant has the burden of proof, the movant need do no
more than aver an absence of evidence to support the nonmoving party's
case." Id. at 763, n.1 (citation and internal quotations omitted). "The burden
of production then shifts to the nonmovant, who, to avoid summary
judgment, must establish the existence of at least one question of fact that
is both genuine and material." Id. (citations and internal quotations
omitted). The "mere existence of some alleged factual dispute between the
parties will not defeat an otherwise properly supported motion for
summary judgment; the requirement is that there be no genuine issue of
material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106
S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In re Fahey, 482 B.R. at 686–87. *See also* Cruickshank v. George R. Roberts Co. (In re Boston

Grand Prix, LLC), No. 16-12574-MSH, Adv. P. No. 17-1115-JNF, 2018 WL 4030731, at *8

(Bankr. D. Mass. Aug. 21, 2018).

    B. General Findings

The Court concludes that the Trustee unequivocally established that the Debtor

knowingly and fraudulently failed to produce records, knowingly and fraudulently

made false oaths, and willfully disobeyed Court orders. It is undisputed that the Debtor

is not an infant or an incompetent person and that her debts are primarily business debts.

In addition, she is represented by experienced bankruptcy counsel. Nevertheless, the

Debtor both pre- and postpetition, admittedly assumed little to no responsibility for the

integrity of her Schedules and SOFA, the production of documents, or adherence to the

Stipulation approved by the Court, the violation of which prompted this Court to order

her to immediately respond to the Trustee's Motion for Order Directing Payment of Rent. Were the Debtor's deficiencies in responding to the Trustee's requests for information, her omissions on the SOFA immaterial, or her failure to fully comply with the terms of the Stipulation isolated incidents, the Court might view the Debtor's conduct through a different lens. Taken as a whole, however, the Debtor's failure to fulfill her duties, including 1) cooperating with the trustee as necessary to enable the trustee to perform *his* trustee's duties under 11 U.S.C. § 704, *see* 11 U.S.C. § 521(a)(3); and 2) surrendering to the Trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate," *see* <u>id.</u> at § 521(a)(4), compel the Court to conclude that the Debtor engaged in a pattern of conduct designed to thwart, and did thwart, the Trustee's expeditious investigation of her financial affairs, including the investigation of the transfers she omitted from her SOFA. The Debtor's failure to adequately respond to the Trustee's requests for financial information caused the estate to needlessly incur legal fees and concomitantly diminished the potential for creditors to receive a dividend.

The Debtor, as her Schedules and SOFA reveal, had complex and intertwined interests in numerous entities, bank accounts and brokerage accounts. She set forth in her Affidavit that her husband was not successful in managing the financial affairs of her family. In her words, "[u]nder his stewardship the family has been enmeshed in over ten years of litigation with MHFA, has presided over business failures, and dissipated the family assets and wealth." She asserted that her husband established the KG Family Trust and transferred his and certain of her assets to the KG Family Trust and that he

liquidated those assets and used the proceeds to invest in businesses in Louisiana, running funds through a Charles Schwab Account she owned with her son.   She maintained that she had no role in the management of the financial affairs of any entities, that she made no decisions, and that her role was totally passive.   Indeed, she admitted to acting as a straw, while complaining that his financial misdeeds forced her into bankruptcy and caused her to live "barely above the poverty line."

While the Debtor may have been passive in her role as a trustee, beneficiary, and owner of various entities, trusts and brokerage accounts prepetition, once she elected to commence a Chapter 7 bankruptcy case and discharge debts in excess of $11 million, she was obliged to perform *her* duties as a Chapter 7 debtor.   As noted above, those duties included cooperating with the Trustee and surrendering property to the Trustee.   The Debtor elected to delegate those responsibilities to her husband, the very same individual who dissipated the family's wealth and whose financial machinations forced her into bankruptcy.   Unless a debtor is incompetent and represented by a guardian, those duties cannot be delegated.   *See* Fed. R. Bankr. P. 1004.1. The Court rejects, as a matter of law, the Debtor's excuses set forth in her Affidavit that her husband was responsible for producing documents and ensuring compliance with the Stipulation with respect to the rental proceeds from 63 Braggs Lane, Barnstable, Massachusetts.  The Debtor was aware of her husband's financial ineptitude and the substantial judgment obtained by MHFA against him.   Her decision to delegate her duties as a debtor to her non-debtor spouse with his track record of financial mismanagement can only be viewed as so reckless as to establish fraudulent intent, and she produced no evidence that he in performing the

22

duties she delegated to him acted without fraudulent intent.  The Debtor had and has no legal grounds for relying upon her husband to perform her duties.  Her decision to foist him on the Trustee as the party responsible for the performance of her duties undermines the words in her Affidavit.  Thus, the adage, "actions speak louder than words" is apt in this case.  Stated another way, the Court must evaluate the Debtor's conduct, which is deemed admitted, rather than her words alone. For example, the Debtor asserted in her Affidavit that she attempted to fully comply with the Trustee's request for information and never withheld documents in her possession, adding that she did not have "any intent to conceal documents or information from the Trustee."  The evidence overwhelmingly contravenes that statement.  The Debtor was responsible for the production of documents, the accuracy of her Schedules and abiding by Court orders.  Her statements that she relied upon her husband to satisfy her responsibilities is woefully insufficient to create a genuine issue of material fact that she did not act with the requisite fraudulent intent where the circumstances and her own words convincingly establish that he was incapable of performing those tasks.

C.  <u>Count I - Section 727(a)(4)(D)</u>

1. Applicable Law

Section 727(a)(4)(D) provides:

(a) The court shall grant the debtor a discharge, unless—

 (4) the debtor knowingly and fraudulently, in or in connection with the case—

> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books,

documents, records, and papers, relating to the debtor's property
or financial affairs;

11 U.S.C. § 727(a)(4)(D). In Dwyer v. Ridley (In re Ridley), 115 B.R. 731 (Bankr. D. Mass.

1990), this Court, citing 11 U.S.C. §§ 521(4) and 727(a)(4)(D), discussed the debtor's

affirmative duty to surrender to the trustee all recorded information relating to property

of the estate and to cooperate with the trustee, stating the following:

> The federal courts have consistently interpreted this duty to mean, in part,
> that a debtor will not be entitled to a discharge in bankruptcy if he
> intentionally withholds records, books, documents, or other papers relating
> to the debtor's property or financial affairs. In re McDonald, 25 B.R. 186, 189
> (Bkrtcy. N.D. Ohio 1982) (Bankruptcy Court for the Northern District of
> Ohio holds, inter alia, that a debtor does not have an inherent right to a
> discharge in bankruptcy and can be refused one for withholding recorded
> information from the trustee).
>
> All books and records which are material to the proper understanding of
> the debtor's financial condition and recent business transactions are within
> the scope of the requirements of § 727(a)(4)(D). Thus, when the debtor fails
> to provide records which are necessary for the trustee to properly
> understand the debtor's financial condition and recent business
> transactions, a discharge will be denied. Matter of Esposito, 44 B.R. 817
> (Bkrtcy. S.D.N.Y. 1984).

In re Ridley, 115 B.R. at 736–37.

"[A] party objecting to discharge under that section has the initial burden of

proving the following: "1) the withholding of documents was done by the debtor or

someone for whose conduct the debtor is legally responsible; 2) was in connection with a

case; 3) was withheld from an officer of the estate entitled to possession; 4) was done

knowingly and fraudulently; and 5) relates to the debtor's property or financial affairs."

Commonwealth of Massachusetts v. Sohmer (In re Sohmer), 434 B.R. 234, 250 (Bankr. D.

Mass. 2010) (citing Olson v. Slocombe (In re Slocombe), 344 B.R. 529, 534 (Bankr. W.D.

Mich. 2006)); *see also* <u>Lassman v. Hegarty (In re Hegarty)</u>, 400 B.R. 332, 344 n.81 (Bankr.

D. Mass. 2008).  As the Plaintiff correctly recognizes, debtors rarely give direct evidence

of fraudulent intent.   It can be proven, however, through circumstantial evidence.

<u>Desmond v. Varrasso (In re Varrasso)</u>, 37 F.3d 760, 764 (1st Cir. 1994).

In <u>Pereira v. Young (In re Young)</u>, 346 B.R. 597 (Bankr. E.D.N.Y. 2006), the court

elaborated:

> Courts have found the requisite intent to act "knowingly and fraudulently"
> was present where the debtor's conduct was *evasive or persistently
> uncooperative*. For example, in <u>In re Erdheim</u>, the court granted summary
> judgment on the trustee's Section 727(a)(4)(D) claim where the debtor
> refused to turn over documents requested by the trustee, and stated by
> affidavit that he produced some of the requested documents but did not
> provide other support for that assertion. <u>In re Erdheim</u>, 197 B.R. at 29. In
> <u>Rafoth v. Chimento (In re Chimento)</u>, 43 B.R. 401 (Bankr. N.D. Ohio 1984),
> the court denied the debtor's discharge under Section 727(a)(4)(D) where
> the debtor withheld financial information from the trustee after numerous
> requests. <u>In re Chimento</u>, 43 B.R. at 403. And in <u>In re Robson</u>, 154 B.R. 536
> (Bankr. E.D. Ark. 1993), the court denied the debtors' discharge where the
> debtors failed to comply with an order directing production to the trustee
> of certain documents and offered no explanation for their failure to turn
> over the documents. <u>In re Robson</u>, 154 B.R. at 540.
>
> By contrast, courts have found that the requisite intent to act "knowingly
> and fraudulently" was absent where the records were unavailable through
> no fault of the debtor. For example, in <u>Ray v. Graham (In re Graham)</u>, 111
> B.R. 801 (Bankr. E.D. Ark.1990), the court found that the trustee did not
> meet his burden under Section 727(a)(4)(D) where the records sought by the
> trustee were either unavailable due to action of another, or neither prepared
> nor kept by the debtor. <u>In re Graham</u>, 111 B.R. at 807.

<u>In re Young</u>, 346 B.R. at 615 (emphasis added).

2. Analysis

The Debtor knowingly and fraudulently withheld documents from the Trustee.

Counsel to the Trustee repeatedly requested substantial documentation from the Debtor

about her interests in trusts, limited liability companies, and bank accounts. The Debtor

did not comply with the Trustee's lawful requests, and it has been deemed admitted and

conclusively established that she did not produce numerous and material documents and

that some documents that she did produce were produced only after the Trustee

commenced this action to deny her discharge. The documents requested by the Trustee

were required for his proper administration of her bankruptcy estate and related to her

asserted ownership of beneficial interests or membership interests in trusts and limited

liability companies, respectively. The Debtor's failure to timely produce documents

hampered the Trustee in the administration of the case, driving up administrative

expenses, and prejudicing creditors.

        The Debtor in her Affidavit provided no legitimate excuse for her failure to

produce requested documents. Her pattern of conduct establishes unequivocally that she

was persistently uncooperative and evasive. *See* <u>In re Young</u>, 364 B.R. at 615. The

Debtor's Affidavit fails to create a genuine issue of material fact as it is deemed admitted

that she did not produce recorded information requested by the Trustee. The Debtor did

not produce competent evidence that the records the Trustee sought were unavailable.

Indeed, the Trustee was forced to obtain some of the documents from third parties when

the Debtor failed to produce them. The Debtor did not produce any competent evidence

that she made any attempts to obtain the documents other than to ask her husband to

provide her with information. She did not attach to her Affidavit copies of any

communications she initiated to obtain from third parties bank records, check images,

account statements, or records relating to the trusts and limited liability companies in

26

which she had interests.  Although the Debtor states that she attempted to fully comply with the Trustee's request for information and never withheld documents in her possession, the deemed admissions set forth above tell a different story.   The Debtor's egregious failure to produce documents despite repeated requests by the Trustee evidences a fraudulent intent to conceal information that would fully illuminate her financial condition and, as noted, she produced no competent evidence to substantiate any attempts to comply.  Her reliance upon her husband to produce the records was reckless and patently unreasonable under the circumstances where he was responsible for the morass of her financial affairs.  The Debtor failed to produce competent evidence that she sought a Rule 2004 examination of her spouse to ascertain what records existed and where they were.  The complexity of the Debtor's ownership interests was such that she had a duty to respond to the Trustee's requests even if it meant seeking an order to compel her spouse to cooperate with her in fulfilling her duties under the Bankruptcy Code.  Dumping thousands of documents on the Trustee, most of which appear not to have been responsive to his requests, cannot overcome the circumstantial evidence of fraudulent intent.  The Court is not obliged to speculate as to the Debtor's motivation for withholding information from the Trustee.  Her persistent dereliction of her duty gives rise to an inference of fraudulent intent that cannot be rebutted by words alone, in the absence of evidence attached to her Affidavit detailing her efforts to shed light on her financial affairs.  Her delegation of her responsibilities to her spouse, her dereliction of her duties  - - her "hands off" approach to satisfying those duties  - - compels but one conclusion that she wished to withhold information from, or delay the Trustee's

discovery of, information that might lead to the discovery of estate property.  The Debtor

failed to submit any evidence that would create a genuine issue of material fact

warranting denial of summary judgment on Count I.  Accordingly, the Court shall enter

summary judgment in favor of the Plaintiff on Count I.

      D. Count III - - Section 727(a)(4)(A)

         1. Applicable Law

In Boroff v. Tully (In re Tully), 818 F.2d 106 (1st Cir. 1987), the United States Court

of Appeals for the First Circuit stated:

> Under § 727(a)(4)(A), the debtor can be refused his discharge only if he (i)
> knowingly and fraudulently made a false oath, (ii) relating to a material
> fact. The burden of proof rests with the trustee, In re Shebel, 54 B.R. 199, 202
> (Bankr. D. Vt. 1985), but "once it reasonably appears that the oath is false,
> the burden falls upon the bankrupt to come forward with evidence that he
> has not committed the offense charged." Matter of Mascolo, 505 F.2d 274,
> 276 (1st Cir. 1974).

818 F.2d at 110. The First Circuit added:

> The statute, by its very nature, invokes competing considerations. On the
> one hand, bankruptcy is an essentially equitable remedy. As the Court has
> said, it is an "overriding consideration that equitable principles govern the
> exercise of bankruptcy jurisdiction." Bank of Marin v. England, 385 U.S. 99,
> 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966). In that vein, the statutory right
> to a discharge should ordinarily be construed liberally in favor of the
> debtor. Matter of Vickers, 577 F.2d 683, 687 (10th Cir.1978); In re Leichter,
> 197 F.2d 955, 959 (3d Cir.1952), cert. denied, 344 U.S. 914, 73 S.Ct. 336, 97
> L.Ed. 705 (1953); Roberts v. W.P. Ford & Son, Inc., 169 F.2d 151, 152 (4th
> Cir.1948). "The reasons for denying a discharge to a bankrupt must be real
> and substantial, not merely technical and conjectural." Dilworth v. Boothe,
> 69 F.2d 621, 624 (5th Cir. 1934).

> On the other hand, the very purpose of certain sections of the law, like 11
> U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of
> the bankruptcy code do not play fast and loose with their assets or with the
> reality of their affairs. The statutes are designed to insure that complete,

truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. As we have stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." <u>Mascolo</u>, 505 F.2d at 278. Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight. *See* <u>In re Tabibian</u>, 289 F.2d 793, 797 (2d Cir.1961); <u>In re Shebel</u>, 54 B.R. at 202. The bankruptcy judge must be deft and evenhanded in calibrating these scales.

<u>In re Tully</u>, 818 F.2d at 110 (emphasis supplied).

To prevail on a claim under this subsection, an objecting plaintiff (a creditor or the trustee) must prove by a preponderance of the evidence "that (1) the debtor made a . . . statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case." *See* <u>Sholdra v. Chilmark Fin. LLP (In re Sholdra)</u>, 249 F.3d 380, 382 (5th Cir. 2001) (citing <u>Beaubouef v. Beaubouef (In re Beaubouef)</u>, 966 F.2d 174, 178 (5th Cir. 1992)). Circumstantial evidence may be used to prove fraudulent intent, <u>id.</u>, and the cumulative effect of false statements may, when taken together, evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent, *see* <u>id.</u> at 383.  In addition, the materiality of an omission is not solely based on the value of the item omitted or whether it was detrimental to creditors. <u>Id.</u> Rather, the statement need only "bear [ ] a relationship to the bankrupt's business transactions or estate, or concern[] the discovery of assets, business dealings, or the existence and disposition of his property." <u>Id.</u> (quoting <u>Chalik v. Moorefield (In re Chalik)</u>, 748 F.2d 616, 617 (11th Cir.1984)). Indeed, it makes no difference that a debtor does not intend to injure his

creditors when she makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them. Id. (quoting Chalik, 748 F.2d at 618).

### 2. Analysis

The Debtor's Schedules and SOFA lack integrity and were never amended. The Debtor had an ownership interest in the Charles Schwab Account ending in 5477 that had sums in excess of $530,000 prior to March 26, 2014. The Debtor listed that account on her bankruptcy Schedules with a balance of $216 and she failed to disclose the transfers of $530,000 on March 26, 2014 and $86,000 on October 7, 2014. The Debtor's contention that she was not responsible for the transfers and, inferentially, was, therefore, excused from disclosing them does not withstand scrutiny, particularly where the transfer of $530,000 was made to Cape Coastal Marine LLC, an entity in which she also claimed an interest, and, more importantly, at a time when she was subject to a preliminary injunction that precluded her from transferring "any and all real or person property" she owned.

It is well settled that "the intent required by § 727(a)(4)(A) is satisfied by a showing of reckless disregard for the truth. Even though courts will not construe an ignorant or inadvertent omission as evidence of fraudulent intent, reckless disregard may be found based upon the "cumulative effect of a series of innocent mistakes which evidence 'a pattern of reckless and cavalier disregard for the truth.'" In re MacDonald, 50 B.R. 255, 259 (Bankr. D. Mass. 1985) (quoting Economy Brick Sales, Inc. v. Gonday (In re Gonday), 27 B.R. 428, 433 (Bankr. M.D. La. 1983)); see also Vasiliades v. Dwyer (In re Vasiliades), No. 05–10479, 2006 WL 1494081, at *4, 2006 U.S. Dist. LEXIS 35317, at *17 (D. Mass. May 23, 2006).

The Debtor's professed ignorance of the transfers cannot protect her from the consequences of her conduct and must be rejected as it is predicated upon a reckless disregard for the truth. The Debtor was enjoined by the Superior Court from transferring her assets.[16]  Accordingly, she was obliged prepetition to ascertain what those assets were and protect them from transfer by a co-signatory to the brokerage account.  Had she had any respect for, or intended to obey, the orders entered by the Superior Court she would have been aware of the significant sums of money in the Charles Schwab Account and protected it from dissipation prior to the commencement of her bankruptcy case.  Instead, she listed the amount in the account at $216 and did not disclose the sizeable transfers from the account on her SOFA.  As this Court observed in <u>Tully</u>, "[a] petitioner cannot omit items from his schedules, force the trustee and the creditors, at their peril, to guess that he has done so-and hold them to a mythical requirement that they search through a paperwork jungle in the hope of finding an overlooked needle in a documentary haystack."  <u>Tully</u>, 818 F.2d at 111.  In addition, "[a] debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath."  <u>Id.</u> (footnote omitted, emphasis supplied); *see also* <u>Commonwealth of Massachusetts v. Sohmer (In re Sohmer)</u>, 434 B.R. 234, 255 (Bankr. D. Mass. 2010).

---

[16] The Court observes that the preliminary injunction was preceded by an ex parte temporary restraining order which was entered owing to the "immediate and irreparable injury, loss, or damage" to MHFA.

In addition to failing to truthfully answer questions on her SOFA, the Debtor listed interests in limited liability companies that had been transferred prior to the petition date to KG Family Trust. Although the Debtor signed her Schedules and SOFA under penalties of perjury, she did not invest effort into ascertaining their truth and accuracy. The Debtor listed her debts as business debts. The Debtor, while describing her role in the financial affairs of her family as passive, was not unsophisticated. The complex construct of trusts and limited liability companies and her roles in them, even if passive, belies any assertion as she was unsophisticated.

Finally, the Debtor never amended her schedules or SOFA when she learned of the transfers. "Although haste may excuse numerous inaccuracies, 'no carelessness could excuse the debtor's failure to amend his papers promptly when he had the leisure to do so.'" In re McDonald, 50 B.R. 259 (quoting In re Gonday, 27 B.R. at 432).

The Court concludes that (1) the Debtor made statements under oath on her Schedules and SOFA that were false. In addition, the Court concludes that, in view of the injunction entered by the Superior Court, the Debtor knew or reasonably should have known that the statement on the SOFA was false and that she omitted the transfers from the Charles Schwab Account with reckless disregard for the truth, thus establishing fraudulent intent. In this regard, disclosure of the transfers would have evidenced violation of the Superior Court's preliminary injunction. Finally, the false statement as to the absence of sizeable transfers was material to the bankruptcy case. In re Sholdra, 249 F.3d at 382. As the First Circuit in Tully observed: "The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the

proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction." In re Tully, 818 F.2d at 110.  The Debtor's professed ignorance of the transfers and the status of certain limited liability companies, namely Jackbox, LLC, J.P. Realty Trust, and Cape 10-21 LLC, is unavailing in view of the totality of the circumstances.  The Debtor, whose financial affairs were entangled with her husband's failed business dealings, had ownership interests in assets that had considerable value, at least at one time.  She had a duty to investigate her financial affairs, obtain and produce pertinent books and records, and answers questions fully and truthfully without reliance upon her memory alone or undocumented inquiries directed to her husband.  By failing to disclose aspects of her financial affairs as required by questions on the SOFA, she was derelict in her duty to answer truthfully.

The Debtor's name was on the Charles Schwab Account regardless of whether it was used by her son or husband as a conduit for shifting funds from one entity to another. In view of the magnitude of the transfers, which were made to a company in which she had an interest, in violation of injunction issued by the Superior Court, and the depletion of that account, the Debtor's omission of transfers totaling $616,000 compels the conclusion that she acted with fraudulent intent to conceal potentially avoidable transfers.

In view of the foregoing, the Court concludes that the Debtor submitted no competent evidence to create a genuine issue of material fact as to Count III.  Thus, the Plaintiff is entitled to summary judgment on that count.

E. Count IV - - Section 727(a)(6)

1. Applicable Law

Section 727(a)(6)(A) provides:  "[t]he court shall grant the debtor a discharge, unless  . . . the debtor has refused, in the case-- . . . to obey any lawful order of the court, other than an order to respond to a material question or to testify."   11 U.S.C. § 727(a)(6)(A).  In Riley v. Tougas (In re Tougas), 354 B.R. 572 (Bankr. D. Mass. 2006), this Court observed:

> The Bankruptcy Code does not define "refused" or "refusal." As the court noted in Gillman v. Green (In re Green), 335 B.R. 181 (Bankr. D. Utah 2005), "[w]here a term is not give [sic] a special definition in a statute, courts must interpret statutes according to their clear and ordinary meaning." Id. at 183 (citing Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)). "Refuse" is defined in *Black's Law Dictionary* as follows:

>> To deny, decline, reject. "Fail" is distinguishable from "refuse" in that "refuse" involves an act of the will, while "fail" may be an act of inevitable necessity.

> *Black's Law Dictionary* 1153 (5th ed.1979) (citing Maestas v. Amer. Metal Co. of New Mexico, 37 N.M. 203, 20 P.2d 924, 928 (1933)). Similarly, in Green, the court looked to the definition of "refusal" in Black's Law Dictionary and stated:

>> The import of this definition is that § 727(a)(6)(A) requires a plaintiff to show more than a mere failure to obey a lawful court order. The plaintiff must show some degree of volition or wilfulness on the part of the debtor in failing to comply with the order.

> 335 B.R. at 184. The Utah bankruptcy court relied upon an unpublished decision of the United States Court of Appeals for the Tenth Circuit, Martinez v. Los Alamos Nat'l Bank (In re Martinez), 126 Fed.Appx. 890, 896 (2005), in which the Circuit Court stated: "[t]he word 'refuse' in the context of § 727(a)(6), 'requires the Court to go further than to simply find that a debtor failed to comply with a discovery request. Rather, it must find that

34

the disobedience was willful or intentional.'" 126 Fed.Appx. at 896 (quoting
D'Agnese v. Cotsibas, 262 B.R. 182, 186 (Bankr. D. N.H. 2001)). *See also* Law
Offices of Dominic J. Salfi v. Prevatt (In re Prevatt), 261 B.R. 54, 60–61
(Bankr. M.D. Fla. 2000); Solomon v. Barman (In re Barman), 237 B.R. 342,
349 (Bankr. E.D. Mich. 1999).

In re Tougas, 354 B.R. at 578.

Under § 727(a)(6), the initial burden of presenting evidence, as well as the ultimate
burden of persuasion, rests upon the plaintiff/objecting party. *See* Fed. R. Bankr. P. 4005.
Moreover, the plaintiff must establish the facts warranting denial of the discharge by a
preponderance of the evidence. In re Barman, 237 B.R. at 347–48.

        2. Analysis

As noted above, the Debtor maintains that she did not willfully refuse to obey the
Stipulation and the Court order directing her to respond to the Trustee's Motion for Order
Directing Payment of Rent under Stipulation because she, as she stated in her Affidavit,
was "never included in the transaction" and "all discussions with the Trustee and his
Counsel were through my husband." The Debtor failed to proffer competent or legally
cognizable evidence to justify the delegation of her duties under the Stipulation to her
spouse. Indeed, she produced no competent evidence of "inadvertence, mistake, or
inability to comply" that would justify her failure to comply with her duties under the
Stipulation. *See* St. Clair v. Cadles of Grassy Meadows II, L.L.C., 550 B.R. 655, 675
(E.D.N.Y. 2016). She merely delegated responsibility for adhering to the Stipulation to
her husband, whose financial track record of "financial missteps, unsuccessful
investments and financial maneuvering" she recognized in her Affidavit.

The approval of the Stipulation was a Court order. The Debtor, not her husband, is the debtor in this Chapter 7 case.  The Debtor executed the Stipulation, and she is a co-owner of the Braggs Lane property.  As noted above, the Debtor proffered no evidence or justification for her failure to abide by the Court order approving the Stipulation and requiring a response to the Trustee's Motion.  The Debtor, in essence, invites this Court to condone her passivity in the face of her duty to adhere to the Stipulation.  To the extent the Debtor seeks to discharge debt in excess of $11 million, she needed to ensure compliance with the Stipulation and respond to the Court's order.  She willfully ignored that responsibility just as she ignored the injunction issued by the Superior Court.

The Debtor failed to submit competent evidence to create a genuine issue of material fact as to Count IV.  Accordingly, the Court shall enter summary judgment in favor of the Trustee on that count.

## V. CONCLUSION

As the Court has observed, the Debtor has exhibited a consistent and pervasive practice of firmly planting her head in the sand with respect to her duties to cooperate with the Trustee and produce documents, to honestly and forthrightly prepare her Schedules and SOFA, and to abide by Court orders.  *See* In re Tully, 818 F.2d at 111.  The Debtor's pervasive disregard of *her* obligations compels but one conclusion:  she intentionally thwarted the Trustee in performing *his* duties to investigate her financial affairs and to collect and reduce to money property of the estate.  Isolated incidents of misconduct may be excused as unintentional, but a pervasive pattern of dereliction cannot be excused and warrants denial of the Debtor's discharge.  In view of the

foregoing, the Court shall enter an order granting the Trustee's Motion for Summary

Judgment on Counts I, III, and IV.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  October 15, 2018